UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 23 CR 451 |
| v. | |
| KENDRICK FRANCISCO | Judge Sharon Johnson Coleman |

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant KENDRICK FRANCISCO, and his attorney, MICHAEL J. PETRO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The information in this case charges defendant with knowingly making a false statement to the U.S. Small Business Administration, in violation of Title 15, United States Code, Section 645(a).

3. Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with knowingly making a false statement to the SBA, in violation of Title 15, United States Code, Section 645(a).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about June 27, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant KENDRICK FRANCISCO made a statement knowing it to be false, for the purpose of influencing in any way the action of the U.S. Small Business Administration ("SBA"), and for the purpose of obtaining money, property, and anything of value, under Chapter 14A of Title 15, United States Code, in violation of Title 15, United States Code, Section 645(a).

More specifically, defendant acknowledges that the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. Defendant further acknowledges that one source of relief provided by the CARES Act was the expansion of the Economic Injury Disaster Loan ("EIDL") program, which provided loan assistance (including advances of $1,000 per employee,

up to $10,000) for businesses with, among other things, 500 or fewer employees and other eligible entities. Defendant acknowledges that, pursuant to authority provided in Chapter 14A, Title 15, United States Code, the EIDL program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue.

Defendant knew that, to gain access to funds through the EIDL program, small businesses applied through the SBA via an online portal and application. Defendant knew that the SBA required applicants to submit truthful information about the applying business, its owner, and its condition prior to the COVID-19 pandemic, including the applicant's number of employees as of January 31, 2020; its gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020; the entity's type of business (i.e., a business, a sole proprietorship, a cooperative, among others); and the date on which the current owner assumed ownership of the business.

Defendant understood that applicants who received EIDL proceeds were required to use those proceeds to pay an array of working capital and normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments. Defendant understood that applicants were required to electronically certify that the information provided in the application was true and correct and were warned that any false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties. Defendant acknowledges that

3

information about the EIDL applicants' business expenses and employees, and how the EIDL would be used, influenced the SBA's approval, terms, and funding of EIDL loans.

On or about June 27, 2020, for the purpose of obtaining money from the SBA, defendant caused to be prepared and submitted to the SBA an application for an EIDL loan and advance on behalf of a purported sole proprietorship doing business under his name. In this application, defendant falsely and fraudulently represented that he was the sole proprietor of an agricultural business that was established in 2019 and had gross revenue of $45,000 in the twelve months prior to January 31, 2020. In fact, as defendant knew at the time that he caused the EIDL application to be submitted to SBA, he was not the sole proprietor of an agricultural business and had not earned gross revenue from such a business in the stated amount in the twelve months prior to January 31, 2020.

Additionally, in order to maximize the EIDL advance payment from SBA, defendant falsely and fraudulently represented in the EIDL application that his purported sole proprietorship employed 10 people as of January 31, 2020. In fact, as defendant knew at the time he caused the EIDL application to be submitted to SBA, his purported sole proprietorship did not employ 10 people.

Through the submission of this false and fraudulent application for an EIDL loan and advance, defendant caused the SBA to disburse an EIDL advance in the

amount of approximately $10,000 into account x9402 maintained by defendant in his own name at Bank of America.

7. Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline § 1B1.3:

On or about April 12, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant made a statement knowing it to be false, for the purpose of influencing in any way the action of the SBA, and for the purpose of obtaining money, property, or anything of value, under Chapter 14A of Title 15, United States Code, in violation of Title 15, United States Code, Section 645(a).

Defendant acknowledges that another source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program implemented by the SBA called the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

Defendant knew that, to obtain a PPP loan, a business or sole proprietor applied through lenders and loan service providers participating in the PPP. The applicant was required to submit and sign a PPP loan application, in which the applicant certified that it had a business in operation on or before February 15, 2020, and that economic uncertainty at the time of the application made the loan request necessary to support the business's ongoing operations, and that PPP loan proceeds

5

would be used by the business only for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Defendant knew that operators of sole proprietorships also had to provide, among other things, the historical amount of self-employment income reflected on the applicant's 2019 or 2020 tax return, as well as a copy of a 2019 or 2020 Form 1040 Schedule C.

Defendant understood that applicants were required to certify that the information provided in the PPP application was true and accurate in all material respects, and to acknowledge the applicant understood that knowingly submitting false information to obtain an SBA-guaranteed loan was punishable by criminal prosecution. Defendant acknowledges that, pursuant to Title 15, United States Code, Section 9008(i), a PPP loan was deemed to be a loan under Chapter 14A, Title 15, United States Code. Defendant acknowledges that information about the PPP applicants' business expenses, and how the PPP loan would be used, was material to lenders' approval, terms, and funding of loans, and to the SBA as well.

On or about April 12, 2021, defendant caused to be prepared and submitted to a PPP lender an application for a PPP loan on behalf of a purported sole proprietorship doing business under his name. In this application, defendant falsely and fraudulently represented that he was the sole proprietor of an Uber business, established in 2020, that had gross income of $100,000 in 2019. In fact, as defendant knew at the time that he caused the PPP loan application to be submitted, he was not the sole proprietor of an Uber business that had gross income of $100,000 in 2019.

In addition, to substantiate the claimed gross income of the purported sole proprietorship in 2019, defendant knowingly caused to be prepared and submitted to the PPP lender a copy of a false 2019 IRS Form 1040 Schedule C that fraudulently represented, among other things, that the sole proprietorship had earned $100,000 in gross income in 2019. In fact, as defendant knew at the time that he caused the form to be submitted, his purported sole proprietorship had not earned gross income in that amount.

When submitting the PPP loan application, defendant also attested that the loan request was necessary to support the ongoing operation of his purported sole proprietorship due to the then-current economic uncertainty resulting from the COVID-19 pandemic. In fact, as defendant knew at the time that he caused the PPP loan application to be submitted, that representation was false.

Through the submission of the false and fraudulent PPP loan application, defendant caused the lender to disburse approximately $20,832 in PPP loan proceeds into account x9402 maintained by defendant in his own name at Bank of America. On or about March 6, 2023, after learning that the government was investigating his EIDL and PPP loan applications, defendant repaid his PPP loan.

## Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 2 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than one year.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

9. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2021 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level is 6, pursuant to Guideline § 2B1.1(a).

ii. Pursuant to Guideline § 2B1.1(b)(1)(C), the base offense level is increased by 4 levels because the loss was more than $15,000, but not more than $40,000.

iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

   iv. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 8 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 0 to 6 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

  e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding

predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

12. Each party is free to recommend whatever sentence it deems appropriate.

11

13. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14. Regarding restitution, defendant acknowledges that the total amount of restitution owed to the SBA is $10,000, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

15. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

16. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code,

Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 23 CR 451.

19. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

20. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

   a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than

13

sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

      b.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

            i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

            ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

            iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a

reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

  iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

  v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

  vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

  vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  c.  **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code,

Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

21. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

22. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

23. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office

of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

25. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

27. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

28. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further

understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

31. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 8/24/2023

**JASON YONAN**
Digitally signed by JASON YONAN
Date: 2023.08.11 12:07:31 -05'00'

_____
Signed by Jason Yonan on behalf of the Acting United States Attorney

*Brian Hayes*
_____
BRIAN HAYES
Assistant U.S. Attorney

_____
KENDRICK FRANCISCO
Defendant

_____
MICHAEL J. PETRO
Attorney for Defendant